**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Case No.: |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | |
| ALBUQUERQUE COUNTRY CLUB, | ) ) ) | |
| Respondent. | ) ) | |

**DECLARATION OF RAYFORD O. IRVIN IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE WHY AN ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

I, Rayford Irvin, solemnly state as follows:

1.      I am the District Director of the Phoenix District Office of the Equal Employment Opportunity Commission ("EEOC" or "Commission"), and, in that role, I am responsible for the operations of the office, including the investigation of charges of employment discrimination.

2.      The Phoenix District Office is responsible for investigating charges that employers have engaged in employment practices made unlawful by Title VII of the Civil Rights Act of 1964, as amended,  42 U.S.C. § 2000e et seq. ("Title VII").

3.      Among the EEOC's investigative files in the Phoenix District Office is the Charge of Discrimination ("Charge") filed against Albuquerque Country Club ("ACC") by charging party Christina Martinez.

4.      I state the following based on my personal examination of the file for the charge involving ACC:

a.   On October 25, 2011, Charging Party Christina Martinez filed a charge of

discrimination alleging that ACC discriminated against her on the basis of sex and

retaliated against her in violation of Title VII.  Charging Party was employed as a

banquets manager and started her employment at ACC in 2010.  The Charge

Number for this complaint against ACC is 39B-2012-00188.  In Ms. Martinez's

charge, she alleges that Patrick Elwell "demeans and treats other women

similarly."  Ms. Martinez also alleges in her charge that "[o]ther women who have

held my position before have engaged in romantic relationships with him to avoid

this hostility" (Attachment 1).

b.   The EEOC sent a notice of the charge to ACC on or about November 1,

2011(Attachment 2).

c.   On or about August 22, 2012, the Commission sent ACC a Request for

Information ("RFI"). The EEOC requested, among other things, a complete

employee list for the period of January 1, 2009 to present.  The EEOC also

requested documents regarding any investigation that was conducted in response

to Charging Party's complaint(s).  The EEOC also requested the personnel file of

the alleged harasser, Patrick Elwell.  The deadline for production of these

documents was September 21, 2012 (Attachment 3).

d.   ACC responded to the EEOC's request on September 12, 2012, but failed to

provide all of the requested information (Attachment 4).

e.   On July 31, 2013, having not received all of the requested information, I issued

subpoena number PHX-13-42 requesting, among other things, investigative

documents related to Charging Party's complaint of discrimination, an employee list for the period of January 1, 2009 to present, and the personnel file of the alleged harasser, Patrick Elwell (Attachment 5).

f. On August 14, 2013, ACC served a Petition to Revoke the Subpoena dated July 31, 2013 (Attachment 6).

g. The Commission determined that Respondent's objections were without merit and ordered ACC to provide the requested documents within twenty-five days of the Determination (Attachment 7).

h. On January 13, 2014, the Commission provided ACC with a copy of the determination and provided ACC with an additional twenty-one days to provide the documents (Attachment 8), making the deadline for production on or about February 10, 2014.

5.     As of the date of this Declaration, ACC has failed to provide the EEOC with the information requested in Subpoena No. PHX-13-42, in particular, the investigative documents from request number 1, the employee listing and information in request number 2, and the personnel file of Patrick Elwell in request number 3.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  May ____8____, 2014

_____
Rayford O. Irvin
District Director
Phoenix District Office

# ATTACHMENT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 11-10-27-0419<br>39B-2012-00188 |

| New Mexico Dept of Workforce Solutions, Human Rights Bureau | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Christina Martinez** | ▮▮▮▮▮ | ▮▮/1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| **9213 Aztec Rd. NE Albuquerque, NM 87111** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Albuquerque Country Club** | **50+** | **(505) 247-4111** |

| Street Address | City, State and ZIP Code |
|---|---|
| **601 Laguna Boulevard SW Albuquerque, NM 87104** | RECEIVED<br>OCT 27 2011<br>HUMAN RIGHTS BUREAU |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Patrick Elwell – General Manager** | | **(505) 720-3003** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5605 Tioga Rd NW    Albuquerque, NM** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Statement of Harm: I have been employed as the Banquets Manager since 2010. During this timeframe I have been subjected to a hostile work environment based on my gender. Specifically, the General Manager – Patrick Elwell was interested in a romantic relationship with me. When I did not engage in this behavior, he began to treat me in a very hostile manner. He also demeans and treats other women similarly. Other women who have held my position before have engaged in romantic relationships with him to avoid this hostility.  He berates me by yelling at me in front of employees when he is correcting me even though I have asked that he do this behind closed doors. He finds ways to undermine me in front of my staff so they do not want to follow my direction. This causes confusion and stress among the staff.  On June 6, 2011 he demoted me from a salaried employee to an hourly employee but I was forced to keep my same duties. On July 25, 2011, I notified the Board of Directors of the Country Club of the harassment. They conducted an "investigation" and concluded that although Mr. Elwell could improve as a manager, he was not sexually harassing me. They would not restore me to my Banquet Manager position. I have concerns about how the investigation was conducted. Mr. Elwell knew in advance which employees were to be interviewed and he made comments to them indicating he knew this. The investigation was conducted in the office right next door to Mr. Elwell. Employees felt intimidated but I know they told the investigator about how women are treated. Even after the harassment was reported, Mr. Elwell continued to yell and demean me and made comments in front of me intimating that another female employee was providing sexual services to males at the club. In retaliation for reporting the sexual harassment I was placed on a performance plan by Mr. Elwell on September 11, 2011. My harasser, Mr. Elwell is still allowed to manage me and decide if I meet up to the plan. Most of the Performance Plan is not directly related to my job duties thus setting me up to fail. This is a concerted way to fire me. Mr. Elwell has already been interviewing replacements for my job and advertised my job in the Albuquerque Journal. There is no one at the Club who oversees Mr. Elwell or monitors his behavior. There is no one for me to report continued harassment to even though the policy provides that I report this harassment to my supervisor.

Respondent's reason for Advertication: None given.

Statement of Discrimination:  I believe I have been discriminated against because of my gender (sexual harassment) and retaliated against for opposing discrimination in violation of the New Mexico Human Rights Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **October 25, 2011** _____ Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:       Agency(ies) Charge No(s):

☐ FEPA

☐ EEOC

**New Mexico Dept of Workforce Solutions, Human Rights Bureau**     and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

RECEIVED

OCT 27 2011

HUMAN RIGHTS BUREAU

# ATTACHMENT 2

EEOC FORM 131-A (11/09)

## U.S. Equal Employment Opportunity Commission

|  | PERSON FILING CHARGE |
|---|---|
| ALBUQUERQUE COUNTRY CLUB<br>601 Laguna S.W.<br>Albuquerque, NM 87104 | **Christina Martinez** |

THIS PERSON (*check one or both*)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**39B-2012-00188**

FEPA CHARGE NO.
**11-10-27-0419**

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____

*(FEP Agency)*

[X] The    **New Mexico Dept of Workforce Solutions, Human Rights Bureau**    and sent to EEOC for dual filing purposes.

*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s):  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race    [ ] Color    [X] Sex    [ ] Religion    [ ] National Origin    [ ] Age    [ ] Disability    [X] Retaliation    [ ] Genetic Information    [ ] Other

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| November 1, 2011 | **George P. Marquez, Jr., Division Director** | *P. Wolf for SM* |

# ATTACHMENT 3



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

August 22, 2012

Mr. Robert P. Tinnin, Jr.
Tinnin Law Firm
500 Marquette NW
Suite 1300
Albuquerque, NM 87102

> **RE:**   *EEOC Charge #39B-2012-00188*
> *Christina Martinez v Albuquerque Country Club*

Dear Mr. Tinnin:

Please be advised that I was recently assigned the above referenced charge for investigation. At this time, it is necessary to obtain additional information in furtherance of this investigation. Please remit your response, or contact me for resolution, by September 21, 2012.

1.   Explain how complaints of inappropriate conduct related to gender are recorded and describe Respondent's established investigatory procedures of such complaints.

2.   Regarding any formal and/or informal complaint made by Charging Party (including EEOC Charge #39B-2012-00188) concerning any inappropriate conduct related to her gender during any time of her employment, provide the following information:

   a.   copy of any formal and informal documentation reflecting Charging Party's complaint(s) of harassment or any other inappropriate conduct, including but not limited to, any and all documentation provided by Charging Party, and notes taken by supervisory or management staff

   b.   name and position title of person(s) receiving each complaint

   c.   date of each complaint

   d.   name and position title of person(s) who conducted an investigation into each complaint

   e.   all documents that record any and all investigative activities into each complaint, including but not limited to, interview notes of all witnesses interviews conducted, tape recordings of all witness interviews, any and all documentation reflecting your investigative activities and findings

   f.   a description of each disciplinary and/or remedial action taken as a result of each complaint including copies and records of all such disciplinary and/or remedial action

3.   During the relevant time period of January 1, 2009 to present, if Respondent received any formal

or informal complaints by any employee other than Charging Party concerning any inappropriate conduct related to gender, submit the following information:

a.    name and position title of each person who complained
b.    name and position title of each person receiving each complaint
c.    date of each complaint
d.    any and all formal and informal written record reflecting the complaint and the name/position title of the person who is subject of the complaint
e.    record of all actions taken by Respondent in response to each complaint including copies of all disciplinary and/or remedial actions taken

4.    Describe all training concerning issues of workplace harassment because of gender that Respondent has provided for its employees and management officials during the relevant time period January 1, 2009 to Present, including but not limited to, the dates of such training, the name and qualifications of the trainer.  Provide copies of any materials provided during such training(s).

5.    Provide a listing of all employees of the Albuquerque Country Club during the relevant time period of January 1, 2009 to Present.  For each provide the following information:

a.    name
b.    gender
c.    social security number
d.    date of hire
e.    position title
f.    date of, and reason for, termination if applicable
g.    copy of termination documents
h.    last known home address and home telephone number

6.    Provide a complete, true and accurate copy of the personnel file for each of the following individuals.  Personnel file shall include, but not be limited to, any and all performance related documentation, personnel action forms, termination documents including reasons for termination, etc.

a.    Christina Martinez
b.    Patrick Elwell

I appreciate your assistance in this matter.  Feel free to contact me with questions or concerns.  I can be reached at (602) 640-5093 or via email at tara.crubaugh@eeoc.gov.

Sincerely,

*Tara Crubaugh*

Tara Crubaugh
Investigator

# ATTACHMENT 4



# Tinnin Law Firm
### A Professional Corporation

September 12, 2012

Tara Crubaugh, Investigator
U.S. Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Ave.
Phoenix, AZ 85012-2504

> **Re:** **EEOC Charge No. 39B-2012-00188; Christina Martinez v. Albuquerque Country Club**

Dear Ms. Crubaugh:

This is in response to your letter of August 22, 2012 concerning the above-referenced charge, requesting certain information and records which you consider to be relevant to your investigation. The following are Respondent's responses to your requests:

<u>PREFACE</u>

**By providing the following responses to the EEOC's request for information, Respondent does not waive any legal defense it may have to the allegations in the Charge of Discrimination. This response is based upon facts presently known to the individual preparing the response and may change as additional information is revealed. Respondent may supplement the following responses as additional information comes to light, or as it may deem appropriate, but Respondent specifically does not undertake any obligation to do so.**

1.      **Explain how complaints of inappropriate conduct related to gender are recorded and describe Respondent's established investigatory procedures of such complaints.**

<u>RESPONSE</u>: Respondent does not maintain any written policy with regard to the procedures to be followed in the investigation of complaints related to gender. Indeed, the complaint by Charging Party, Christina Martinez, is the only complaint of gender discrimination of which Respondent has any record. Respondent does have in place a policy governing sexual and other unlawful harassment which provides that complaints of sexual or unlawful harassment will be investigated promptly and appropriate corrective action taken, depending upon the circumstances.

In this particular case, the allegations of unlawful sexual harassment were initially made in a letter dated July 25, 2011 from attorney Francie Cordova on behalf of Charging Party to then ACC President, Ted Asbury, alleging that Ms. Martinez had been subjected to a sexually hostile

Tara Crubaugh
September 12, 2012
Page 2

environment at Albuquerque Country Club ("ACC") and requesting that she be returned to the Catering Manager position from which she had been removed. Ms. Cordova's letter did not offer any factual basis for the assertion that Ms. Martinez was subjected to "a hostile work environment" at ACC. Rather, Ms. Cordova stated that only that Charging Party "has been subjected to a hostile work environment by the General Manager - Patrick Elwell" with no further explanation. Ms. Cordova added in her letter that General Manager Elwell had made "suggestive comments" to Ms. Martinez regarding dating in the food and beverage industry, suggesting that people who work in the industry should socialize with others who work similar hours in the same industry, and that he "made demeaning comments about how 'women cannot understand' and that 'they should not be in the workplace.'"

In response to Ms. Cordova's letter, ACC, acting through its legal counsel, retained Mr. Richard Dickerson, an independent human resources consultant with several decades of experience in the field, to investigate the allegations in the letter and to report his findings and recommendations to ACC legal counsel who would, in turn, provide the ACC board of directors with his recommendations for going forward. The methodology employed by Mr. Dickerson in his investigation is set forth in detail in my letter of March 21, 2012 to Ms. Sylvia Fernandez in response to acting Office Director Elizabeth Cadle's letter, dated March 6, 2012, requesting that Respondent submit a statement of position with regard to the allegations in the charge.

2. **Regarding any formal and/or informal complaint made by Charging Party (including EEOC Charge #39B-2012-00188) concerning any inappropriate conduct related to her gender during any time of her employment, provide the following:**

    a.    **copy of any formal and informal documentation reflecting Charging Party's complaint(s) of harassment or any other inappropriate conduct, including but not limited to any and all documentation provided by Charging Party, and notes taken by supervisory or management staff**

    b.    **name and position title of person(s) receiving such complaint**

    c.    **date of each complaint**

    d.    **name and position title of person(s) who conducted an investigation into each complaint**

    e.    **all document that record any all investigative activities into each complaint including but not limited to, interview notes of all witnesses interviews conducted, tape recordings of all witness interviews, any and all documentation reflecting your investigative activities and findings**

    f.    **a description of each disciplinary and/or remedial action taken as a result of each complaint including copies and records of all such disciplinary and/or remedial action**

RESPONSE: The only complaint submitted by Charging Party, formally or informally,

Tara Crubaugh
September 12, 2012
Page 3

concerning any inappropriate conduct related to her gender during any of her time of employment was in the letter of July 25, 2011 from her counsel Francie Cordova to then ACC President Ted Asbury, which was enclosed with statement of position submitted by Respondent to the EEOC by letter of March 21, 2012.  Mr. Dickerson's report of his investigation, dated August 11, 2011 marked "attorney-client privileged/prepared at the request of counsel in anticipation of litigation" was submitted to counsel for the Respondent.

On August 24, 2011 ACC legal counsel wrote Charging Party's counsel, Francie Cordova, advising her that the investigation had been completed and informed her of the conclusions drawn as a result of Mr. Dickerson's investigation.  A copy of counsel's letter, dated August 24, 2011, to Ms. Cordova is enclosed as Attachment 1.  In substance, the letter informed Ms. Cordova that the investigation did not substantiate the allegations of sexual harassment which Martinez had made against General Manager Elwell.  It also informed Ms. Cordova that Ms. Martinez's demotion would stand and her supervisory chain of command would remain unchanged.

In order to provide Ms. Martinez with an adequate opportunity to address her performance shortcomings and expectations, it was decided that General Manager Elwell, with Human Resources Consultant Dickerson's assistance, would provide Ms. Martinez with a more complete written review of her deficiencies as ACC perceived them and would work with her to develop a performance improvement plan, including specific goals and timetables within which they must be accomplished.

A performance improvement plan was subsequently developed and Ms. Martinez met weekly with General Manager Elwell, with Human Resource Consultant Dickerson present, to review her progress.  A copy of the performance improvement plan, dated September 7, 2011, is enclosed as Attachment 2.  Ms. Martinez was specifically informed that after sixty days, which would end on November 8, 2011, a determination would be made if her performance merited her to being returned to the Catering Manager.  This was an approximate sixty day extension of the time she was originally told a final decision would be made regarding her being returned to the Catering Manager position and/or continued in ACC's employment.

During the sixty day period following the development of the performance improvement plan, Ms. Martinez's performance did not improve.  She continued to display a pattern of tardiness and absenteeism and lack of organization.  Her lack of organizational skills was underscored by her action in late October of double booking wedding receptions at ACC, which was viewed by the General Manager Elwell as inexcusable and virtually unforgivable as sufficient reason in and of itself to merit her termination, but he continued her performance review, as promised.  On November 9, 2011 Ms. Martinez was given a letter of termination from employment.

Tara Crubaugh
September 12, 2012
Page 4

**3.      During the relevant time period of January 1, 2009 to present, if Respondent received any formal or informal complaints by any employee other than Charging Party concerning any inappropriate conduct related to gender, submit the following information:**

      **a.      name and position title of each person who complained**

      **b.      name and position title of each person receiving each complaint**

      **c.      date of each complaint**

      **d.      any and all formal and informal written record reflecting the complaint and the name/position title of the person who is subject of the complaint**

      **e.      record of all actions taken by Respondent in response to each complaint including copies of all disciplinary and/or remedial actions taken**

RESPONSE: During the period from January 1, 2009 to present Respondent received no formal or informal complaints by employees other than Charging Party concerning any inappropriate conduct related to gender.

**4.      Describe all training concerning issues of workplace harassment because of gender that Respondent has provided for its employees and management officials during the relevant time period January 1, 2009 to present, including but not limited to, the dates of such training, the name and qualifications of the trainer.  Provide copies of any materials provided during such training(s).**

Response: During the period from January 1, 2009 to present Respondent provided, on September 14, 2011 and October 25, 2011, training sessions for its employees and management and on issues related to workplace harassment.  The training was conducted by Robert P. Tinnin, Jr., labor and employment legal counsel for Respondent.  Mr. Tinnin is recognized as a specialist in labor and employment matters by the New Mexico Board of Legal Specialization.  For several decades he has offered training to supervisors and managers as well as employees in illegal workplace harassment.  A copy of the written materials utilized in the October 2011 training sessions for non-supervisory employees is enclosed, as Attachment 3.

**5.      Provide a listing of all employees of the Albuquerque Country Club during the relevant time period of January 1, 2009 to present.  For each provide the following information:**

      **a.      name**
      **b.      gender**

Tara Crubaugh
September 12, 2012
Page 5

      c.        **social security number**
      d.        **date of hire**
      e.        **position held**
      f.        **date of, and reason for, termination if applicable**
      g.        **copy of termination documents**
      h.        **last known home address and home telephone number**

RESPONSE: The information requested is not being provided.  Section 709(a) of Title VII grants to the Commission "access to, for the purposes of examination and the right to copy any evidence of any person being investigation or proceeded against that relates to unlawful employment practices covered by this [title] *and* is relevant to the charge under investigation." 42 U.S.C. §2000e-8(a)(2000)(emphasis added).  The information requested is in no way relevant to the allegations in the charge.  Frankly, the only purpose which might be served through this information would be for the Commission to contact current and past employees to suggest to them they might have been victims of harassment.  This would be disruptive and would negatively impact employee morale.  In these circumstances that is not an appropriate use of the information, since Charging Party's allegations provide no basis whatsoever for an assumption that employees of ACC might have been subjected to inappropriate conduct related to gender.  If you will provide a statement of why you believe the requested information is relevant to your investigation of the charge, Respondent will reconsider its position.

**6.      Provide a complete, true and accurate copy of the personnel file for each of the following individuals.  Personnel files shall include, but not be limited to, any and all performance related documentation, personnel action forms, termination documents including reasons for termination, etc.**

      a.        **Christina Martinez**
      b.        **Patrick Elwell**

RESPONSE: A copy of Charging Party's personnel file is enclosed as Attachment 4.  Mr. Elwell's file is not enclosed.  His employment with Respondent terminated on April 24, 2012, for reasons totally unrelated to the allegations in the charge or to any other allegations of unlawful misconduct.  Respondent submits that in any event Mr. Elwell's personnel file and the information therein is not relevant in any way to investigation of this charge except insofar as it might contain information concerning other allegations of illegal harassment by Mr. Elwell, but Respondent affirmatively states that it does not.  Again, if the Commission will provide a statement of why it believes the requested information requested is relevant to your investigation of the allegations in the charge.  Respondent will consider its position.

We trust that the foregoing is responsive to your requests.  Should you desire further or additional information, please do not hesitate to contact us.

Tara Crubaugh
September 12, 2012
Page 6

Very truly yours,

TINNIN LAW FIRM
a professional corporation

By: _____
Robert P. Tinnin, Jr.

# ATTACHMENT 5

EEOC Form 136
(11/09)

# UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# SUBPOENA

TO:  Custodian of Records
     Albuquerque Country Club
     601 Laguna Blvd. SW
     Albuquerque, NM  87111

NO: PHX-13-42

IN THE MATTER OF:  Christina Martinez v Albuquerque Country Club

Charge No. 39B-2012-00188

Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:

[ ] Testify before:          [ ] Produce and bring  * or     [X] Mail  * the documents described below to:

[ ] Produce access to the evidence described below for the purpose of examination or copying to:

Tara Crubaugh, Investigator                               of the Equal Employment Opportunity Commission

at  3300 N. Central Avenue, Suite 690, Phoenix, AZ  85012     on August 22, 2013        at  12:00 PM        o'clock

The evidence required is
See attachment A.

This subpoena is issued pursuant    [X] (Title VII) 42 U.S.C. 2000e-9    [ ] (ADEA) 29 U.S.C. 626(a)    [ ] (EPA) 29 U.S.C. 209
                                     [ ] (ADA)  42 U.S.C. 12117(a)        [ ] (GINA) 42 U.S.C. 2000ff-6

ISSUING OFFICIAL (Typed name, title and address)          ON BEHALF OF THE COMMISSION

    Rayford O. Irvin, District Director
US Equal Employment Opportunity Commission
    3300 N. Central Avenue, Suite 690
        Phoenix, AZ 85012

                                      JUL 3 1 2013
                                          Date

*NOTICE TO PERSON SUBPOENAED - The Commission will not pay witness fees or travel expenses for the delivery of required documents to a Commission office unless the box "Testify before" is also checked on the subpoena.

SUBPOENA

Attachment to Subpoena   PHX-13-42   Dated   JUL 3 1 2013   in Charge No.   39B-2012-00188

Attachment A:

1. Regarding any formal and/or informal complaint made by Charging Party (including EEOC Charge #39B-2012-00188) concerning any inappropriate conduct related to her gender during any time of her employment, provide the following:

    a. Copy of any formal and informal documentation reflecting Charging Party's complaint(s) of harassment or any other inappropriate conduct, including but not limited to, any and all documentation provided by Charging Party, and notes taken by supervisory or management staff;
    b. Name and position title of person(s) receiving such complaint;
    c. date of each complaint;
    d. name and position title of person(s) who conducted an investigation into each complaint;
    e. all documents that record and all investigative activities into each complaint, including, but not limited to, interview notes of all witness interviews conducted, tape records of all witness interviews, any and all documentation reflecting your investigative activities and findings, etc.;
    f. a description of each disciplinary and/or remedial action taken as a result of each complaint, including copies and records of all such disciplinary and/or remedial action.

2. Provide a listing of all employees of the Albuquerque Country Club during the relevant time period of January 1, 2009 to present. For each, provide the following information:

    a. Name;
    b. Gender;
    c. Social security number;
    d. date of hire;
    e. Position held;
    f. Date of, and reason for, termination, if applicable;
    g. Copy of termination documents;
    h. Last known home address and home telephone number.

3. Provide a complete, true, and accurate copy of the personnel file for Patrick Elwell. Personnel file shall include, but not be limited to, any and all performance related documentation, disciplinary documentation, personnel action forms; termination documents including reason for termination, hiring documentation, etc.

On Behalf of the Commission:

Rayford O. Irvin                                                        JUL 3 1 2013

District Director                                                          Date

Page 3 of Form 136  (11/09)

# SUBPOENA
## PROOF OF SERVICE

I hereby certify that being over 18 years of age and not a party to or any way interested in these proceedings, I duly served a copy of the subpoena on the persons named in this subpoena.

| | |
|---|---|
| [ ] | in person |
| [x] | by certified mail |
| [ ] | by leaving a copy with a responsible person, at the |

principal office or place of business, to wit:

| | |
|---|---|
| Name | Albuquerque Country Club |
| Position | Custodian of Records |
| Address | 601 Laguna Blvd. SW        Albuquerque, NM 87111 |

On _____ July 31, 2013 _____
*(Mo, day & year)*

*(Signature of person making service)*

_____ Control Clerk _____
*(Official title, if any)*

| | |
|---|---|
| State | Arizona |
| Parish/County | Maricopa |

## CERTIFICATION OF ATTENDANCE

I certify that the person named herein was in attendance and satisfactorily produced the records requested or gave oral testimony at _____

On _____
*(Mo, day & year)*

_____
*(Signature of person making service)*

_____
*(Official title, if any)*



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 39B-2012-0188 |
| Certified Fee | PHX-13-42 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Custodian of Records
Street, Apt. No.; or PO Box No. Albuquerque Country Club
City, State, ZIP+4 601 Laguna Blvd. SW Albuquerque, NM 87111

PS Form 3800, August 2006    See Reverse for Instructions

7009 1680 0000 5253 7643

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Custodian of Records
Albuquerque Country Club
601 Laguna Blvd. SW
Albuquerque, NM 87111
39B-2012-0188
SUBPOENA # PHX-13-42

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7009 1680 0000 5253 7643

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 39B-2012-0188 |
| Certified Fee | DHV 13-42 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

Postmark Here

Total Postage & Fees $

Sent To: Mr. Robert P. Tinnin, Jr.
Street, Apt. No.; or PO Box No. Tinnin Law Firm 500 Marquette NW, Suite 1300
City, State, ZIP+4 ALBUQUERQUE, NM 87102

PS Form 3800, August 2006    See Reverse for Instructions

7009 2250 0002 2025 4341

---

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br><br>B. Received by ( Printed Name )  C. Date of Delivery |
| 1. Article Addressed to:<br>Mr. Robert P. Tinnin, Jr.<br>Tinnin Law Firm<br>500 Marquette NW<br>Suite 1300<br>Albuquerque, NM 87102<br>39B-2012-0188<br>SUBPOENA # PHV-13-42 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Transfer from service label)  7009 2250 0002 2025 4341 | |

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Robert P. Tinnin, Jr.
Tinnin Law Firm
500 Marquette NW
Suite 1300
Albuquerque, NM 87102
?^B-2012- 0188
UBPOELA # PHX-13-42

2. Article Number
(Transfer from service label)

7009 2250 0002 2025 4341

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Sender: Please print your name, address, and ZIP+4 in this box ●

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Avenue, Suite #690
Phoenix, Arizona 85012

Att: Tara Crubaugh

# ATTACHMENT 6

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

REC'D EEOC

AUG 1 4 2013

PXDO

CHRISTINA MARTINEZ,

    **Charging Party**

v.                                            EEOC Charge No. 39B-2012-00188

ALBUQUERQUE COUNTRY CLUB,

    **Respondent**

### PETITION TO REVOKE SUBPOENA

To:    Rayford O. Irvin
        District Director
        U.S. Equal Employment Opportunity Commission
        3300 N. Central Ave., Ste. 690
        Phoenix, AZ 85012

Pursuant to 29 CFR § 1601.16(b)(1), Petitioner/Respondent Albuquerque Country Club

(ACC) hereby petitions to revoke the subpoena requiring the Petitioner/Respondent to produce

certain information to the United States Equal Employment Opportunity Commission

("Commission"), which subpoena was served by the Commission on Respondent on August 6,

2013.  A copy of the subpoena is attached as Attachment A.  As grounds for this Petition

Petitioner/Respondent states that the evidence sought by the subpoena has either been produced

or does not relate to any matters under investigation and is irrelevant to the Charge.

Factual Background

On October 27, 2011, Charging Party filed with the New Mexico Department of

Workforce Solutions, dual filed with the Commission, a charge of discrimination in the above-

captioned cause alleging that she had been subjected to a hostile work environment and

retaliated against by reason of her gender, female.   A copy of the Charge is attached as
Attachment B.

After Charging Party filed her charge, the Commission commenced investigation of the
allegations in the change and in the course of said investigation requested that
Petitioner/Respondent submit a written position statement with regard to the allegations in the
Charge.  On March 21, 2012, Petitioner/Respondent filed with the Commission its "Statement
of Position".  A copy of said Statement of Position is attached as Attachment C.  In its
Statement of Position, Petitioner/Respondent denied the allegations in the Charge, asserting
instead that Charging Party was terminated from her position as Catering Manager on
November 8, 2011 for performance related reasons.

Ms. Martinez had a documented history of unsatisfactory performance almost
immediately upon assuming the position of Catering Manager, on March 13, 2010, following
her initial employment by ACC as a part-time bartender in early 2009.  On July 25, 2011 ACC
President, Ted Asbury received a letter dated July 25, 2011 alleging that Ms. Martinez had been
subjected to a sexually hostile work environment at ACC.  In her letter of July 25, 2011 to ACC
President Asbury  Ms Martinez's attorney, Francie Cordova, did not offer any factual basis for
the assertion that Ms. Martinez was subjected to "a hostile work environment" at ACC.  Rather,
she stated only that Ms. Martinez "has been subjected to a hostile work environment by the
General Manager – Patrick Elwell" with no further explanation.  Ms. Cordova added in her
letter that General Manager Elwell made "suggestive comments" to Ms. Martinez regarding
dating in the food & beverage industry, stating that she and Mr. Elwell should socialize with
others who work similar hours and in the same industry and that he "made demeaning

comments about how 'women cannot understand'" and that"'they should not be in the workplace.'"

The allegations in Ms. Cordova's July 25, 20011 letter were investigated by Richard Dickerson, an independent human resources consultant with several decades of experience, who was charged with reporting his findings and recommendations to ACC legal counsel and to the Board of Directors.  On August 24, 2011 ACC legal counsel wrote Ms. Cordova advising her that the investigation had been completed and informed her of the conclusions drawn as a result of human resources consultant Dickerson's investigation.  In the letter Ms. Cordova was informed that the investigation did not substantiate the allegations of sexual harassment which Ms. Martinez had made against General Manager Elwell.  The letter also informed Ms. Cordova that Ms. Martinez's demotion would stand and that her supervisory chain of command would remain unchanged.  A copy of the letter from Robert P. Tinnin, Jr. to Francie Cordova is attached as Attachment D.

In order to provide Ms. Martinez with an adequate opportunity to address her performance shortcomings and expectations, ACC determined that General Manager Elwell, with human resources consultant Dickerson's assistance, would provide Ms. Martinez with a more complete written review of her deficiencies as ACC perceived them and would work with her to develop a performance improvement plan, including specific goals and timetables within which they must be accomplished.  A performance improvement plan was subsequently developed and Ms. Martinez met weekly with General Manager Elwell, with human resources consultant Dickerson present, to review her progress.  She was specifically informed that after 60 days, which would end on November 8, 2011, a determination would be made whether her performance merited her being returned to Catering Manager position. This constituted

approximately 60 day extension of the time she was originally told a final decision would be made regarding her being returned to the Catering Manager position and/or being continued in ACC's employment.

During the 60 day period following the development of the performance improvement plan Ms. Martinez's performance did not improve.  She continued to display a pattern of tardiness and absenteeism and a lack of organization, which was underscored by her action in late October of double booking wedding receptions at ACC.  This was viewed by General Manager Elwell as inexcusable and virtually unforgivable, constituting sufficient cause in and of itself to merit her termination, nonetheless.  Nonetheless, he continued her performance review period, as promised.  On November 9, 2011 Ms. Martinez was given a letter of termination from employment. A copy of the termination letter is attached as Attachment E.

Thereafter, by letter of August 22, 2012 the Commission requested that Petitioner/Respondent furnish certain information asserted to be material to investigation of the Charge, including the information sought by the subpoena subject of this Petition to Revoke. Petitioner/Respondent responded by letter from legal counsel dated September 12, 2012, furnishing the information requested in paragraph 1 of the subpoena but withholding the information requested in paragraphs 2 and 3.  A copy of the Petitioner/Respondent's response to the request for information (without attachments) is attached hereto as Attachment F.  Thus, Petitioner/Respondent does not intent to comply with the subpoena insofar as the information requested in paragraph 1 is concerned.

The two items which Petitioner/Respondent declined to furnish were (1) a list of all employees at ACC during the time period from January 1, 2009 "to the present", including name, gender, social security number, date of hire, position held, date for and reason for,

termination if applicable, copies of termination documents and last known home address and home telephone numbers and (2) a complete true and accurate copy of the personnel file, including all performance related documents, personal action forms, termination documents, including reasons for termination, etc. for Patrick Elwell.

As the basis for declining to furnish information related to individuals employed by ACC from January 1, 2009 to present Petitioner responded that the information requested was in no way relevant to the allegations in the Charge and suggested that the only purpose which might be served through this information would be for the Commission to contact current and past employees to suggest to them that they might have been victims of harassment, which would be disruptive and would negatively impact employee moral. Attachment F, ¶5. ACC declined to provide Mr. Elwell's personnel file on the ground that it, likewise, and the information therein would not be relevant in any way to investigation of the Charge except insofar as it might contain information concerning other allegations of illegal harassment by Mr. Elwell, but asserting affirmatively that it does not. Attachment F, ¶6.

With regard to both requests Respondent stated that if the Commission would provide a statement of why the Commission considers the requested information relevant to its investigation, Respondent would reconsider its position.   Thus, for the reasons previously stated in response to the requests by the Commission for information as set forth in its August 22, 2012 letter, Petitioner/Respondent does not intend to comply with the subpoena's request in Paragraphs 2 and 3 of the subpoena.

<u>Argument and Authorities</u>

Section 709(a) of Title VII grants to the Commission "access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded

against that relates to unlawful employment practice covered by this [title] *and* is relevant to the Charge under investigation." 42 U.S.C. § 2000e-8(a)(2000) (emphasis added). Thus, the information required by the subpoena subject of this Petition to Revoke must be both related to a matter under investigation and relevant to the charge being investigated. Section 710 of Title VII (42 U.S.C. § 2000e-9 (2000)), as amended in 1972, makes Section 11 of the National Labor Relations Act (29 U.S.C. Section 161(2000)), applicable to investigations conducted by the Commission and thus provides the EEOC with the right to access and copy all evidence, to require attendance and testimony of witnesses, and the power to issue subpoenas in support of its investigative authority.   29 U.S.C. § 161 (2000).

Many courts, including the United States Court of Appeals for the Tenth Circuit, which has jurisdiction over appeals in cases from New Mexico federal district courts, have held that the EEOC subpoena power is broad. *See, e.g., EEOC v. Dillon Cas., Inc.*, z310 F.3d 1271 (10th Cir. 2002); *EEOC v. United Airlines, Inc.* 287 F.3d 643, 649 (7th Cir. 2002) (but unlike other federal agencies it is entitled only to evidence "relevant to the charge under investigation); *EEOC v. Tire Kingdom Inc.*, 80 F.3d 449, 450 (11th Cir. 1996) (district court role limited to ascertaining whether the investigation is within agency's authority, whether too indefinite and whether information sought is reasonably relevant); *EEOC v. Quad/Graphics, Inc.* 63 F.3d 642, 645 (7th Cir. 1995). It is true that courts enforce most EEOC subpoenas, including those that appear to be broad or that seek what an employer may view as marginally relevant information. *See, e.g., EEOC v. City of Milwaukee,* 919 F.Supp. 1247, 1259 (E. D. Wisc. 1996). However, it is the EEOC's burden to show that the information relates to the charge. *See, e.g., EEOC v. Southern Farm Bureau*, 271 F.3d 209, 211 (5th Cir. 2001) (EEOC may obtain only evidence relevant to the charge under investigation).

As observed by the Tenth Circuit, the United States Supreme Court has clearly held that the statutory subpoena scheme applicable to the EEOC places the burden on the Commission to demonstrate the relevance of the information requested. *Dillon Cas., Inc.,* at 1274 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984)).  Furthermore, the statutory scheme places the burden on the EEOC to demonstrate the relevance of the information requested in its subpoena to the charge under investigation. *See, EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001).

Petitioner/Respondent submits that the evidence requested here is not relevant to the charge under investigation.  Section 401 of the Federal Rules of Evidence defines the test for whether evidence is relevant as whether "it has the tendency to make a fact more or less probable than it would be without the evidence" and whether "the fact is of consequence in determining the action."  FED. R. EVID. 401.  Petitioner/ Respondent submits that the evidence sought here does not satisfy either prong of the test for relevance set forth in the rule. The charge alleges discriminatory treatment of a single individual employee and retaliation against that individual for unspecified reasons because of his disability by terminating him.  It seeks information well outside the 300 day period for filing a charge specified in Section 706(e)(1) of Title VII (42 U.S.C. Section 2000e(1)(2007)).  To that extent it could not possibly be relevant to the allegations in this charge.  Furthermore, the information requested would, not make any allegation in the charge more probable, since the allegations relate only to discriminatory treatment of a single individual.  Information concerning other employees would be of no consequence with regard to Charging Party's allegations.

Communications by the Commission with other employees and former employees of Petitioner/Respondent, without any basis for believing they were witnesses to or had

knowledge of the facts which support or rebut Charging Party's allegations, would not be relevant to investigation of the charge.  There are no allegations of pattern and practice of hostile environment sexual harassment and this information could not lead to the discovery of information relevant to the Charge.  There is simply no basis for the Commission to use this narrow charge as a springboard from which to conduct a far flung, disruptive, expensive and time consuming investigation.

Conclusion

For the foregoing reasons Petitioner/Respondent respectfully submits that the subpoena should be revoked in its entirety.

Respectfully submitted,
TINNIN LAW FIRM,
a professional corporation

By:

Robert P. Tinnin, Jr.
Attorneys for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered via U.S. Mail upon the following this 12th day of August 2013.

Rayford O. Irvin
District Director
U.S. Equal Employment Opportunity Commission
3300 N. Central Ave., Ste. 690
Phoenix, AZ 85012

_____

Robert P. Tinnin, Jr.

# ATTACHMENT 7

BEFORE THE UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE MATTER OF:                              )
                                               )
Christina Martinez,                            )
                                               )   SUBPOENA NO. PHX-13-42
              CHARGING PARTY,                  )
                                               )
v.                                             )   CHARGE NO. 39B-2012-00188
                                               )
Albuquerque Country Club,                      )
                                               )
              PETITIONER.                       )
                                               )

PETITIONER:  Albuquerque Country Club      BY: Robert P. Tinnin, Jr.
             601 Laguna Blvd. SW               Tinnin Law Firm
             Albuquerque, NM 87111             500 Marquette NW
                                               Suite 1300
                                               Albuquerque, NM 87102


## DETERMINATION ON PETITION TO REVOKE OR

## MODIFY SUBPOENA

Albuquerque Country Club has petitioned the Equal Employment Opportunity Commission ("EEOC" or the "Commission") to revoke Subpoena No. PHX-13-42 issued by the Commission's Phoenix District Office.  The Commission issues this determination pursuant to 29 C.F.R. §1601.16 and in accordance with Section 24.12 of the Compliance Manual.  For the reasons set forth below, the petition is denied.

### I.      BACKGROUND

#### A.  History of Charge and Subpoena

On October 27, 2011, Charging Party Christina Martinez filed a charge of discrimination with the New Mexico Department of Workforce Solutions alleging that Petitioner, Albuquerque Country Club ("ACC" or " Petitioner"), discriminated against her on the basis of sex and in

retaliation for her reporting sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Charging Party, who was employed as a Banquets Manager since 2010, alleged that the General Manager, Patrick Elwell, approached her about having a romantic relationship with her, but when she rebuffed his advances he retaliated against her by treating her in a hostile manner and demeaning her on a regular basis. At the time of her charge, she alleged that Mr. Elwell continued to treat her this way and that he berated her, yelled at her in front of employees, and found ways to undermine her in front of her staff so they did not want to follow her direction. Charging Party alleges that Mr. Elwell similarly demeans and mistreats other female employees. On June 6, 2011, Mr. Elwell demoted Charging Party from a salaried employee to an hourly employee, despite the fact that she kept her same duties. On July 25, 2011, Charging Party notified Petitioner's Board of Directors of Mr. Elwells harassment and retaliation. After Charging Party made this complaint, Petitioner launched an investigation. But Charging Party alleges that ACC's investigation into her complaint was not properly conducted. She states that Mr. Elwell knew in advance which employees were to be interviewed and that he made comments to those employees indicating that he knew. According to Charging Party, the investigation was conducted in the office right next door to Mr. Elwell, possibly intimidating some of the employee witnesses. Even after the Charging Party's formal complaint, Mr. Elwell continued to yell at and demean Charging Party and made comments in her presence suggesting that "another female employee was providing sexual services to males at the club."

On or about November 17, 2011, the New Mexico Human Rights Bureau transferred this case to the Commission for investigation pursuant to the agencies' worksharing agreement. On or about August 22, 2012, the EEOC Investigator sent an information request to Petitioner. Petitioner's response to the request was incomplete, and it refused to comply with several

portions of the request. The Commission then issued Subpoena No. PHX-13-42 on July 31,

2013 to Petitioner.

### B. Evidence Requested in the Subpoena

Subpoena No. PHX-13-42 sought the following information from Petitioner:

1) Regarding any formal and/or informal complaint made by Charging Party (including EEOC Charge #39B-2012-00188) concerning any inappropriate conduct related to her gender during any time of her employment, provide the following:
   a. Copy of any formal and informal documentation reflecting Charging Party's complaint(s) of harassment or any other inappropriate conduct, including but not limited to, any and all documentation provided by Charging Party, and notes taken by supervisory or management staff;
   b. Name and position title of person(s) receiving such complaint;
   c. date of each complaint;
   d. name and position title of person(s) who conducted an investigation into each complaint;
   e. all documents that record and all investigative activities into each complaint, including, but not limited to, interview notes of all witness interviews conducted, tape records of all witness interviews, any and all documentation reflecting your investigative activities and findings, etc.;
   f. a description of each disciplinary and/or remedial action taken as a result of each complaint, including copies and records of all such disciplinary and/or remedial action.
2) Provide a listing of all employees of the Albuquerque Country Club during the relevant time period of January 1, 2009 to present. For each, provide the following information:
   a. Name;
   b. Gender;
   c. Social security number;
   d. date of hire;
   e. Position held;
   f. Date of, and reason for, termination, if applicable;
   g. Copy of termination documents;
   h. Last known home address and home telephone number.
3) Provide a complete, true, and accurate copy of the personnel file for Patrick Elwell. Personnel file shall include, but not be limited to, any and all performance related documentation, disciplinary documentation, personnel action forms; termination documents including reason for termination, hiring documentation, etc.

### C. Petitioner's Objections to the Subpoena

Under the administrative provisions of 29 C.F.R. § 1601.16(b)(1), Petitioner has moved

to revoke Subpoena No. PHX-13-42 in its entirety.  Petitioner asserts general objections to the entire subpoena stating that the information requested "has either been produced or does not relate to any matters under investigation and is irrelevant to the Charge."  With respect to the individual requests, Petitioner asserts that the information sought in Request No. 1 was furnished to the Commission in a letter from legal counsel dated September 12, 2012; the information sought in Request No. 2 is "in no way relevant to the allegations in the Charge" and that "the only purpose which might be served through this information would be for the Commission to contact current and past employees to suggest to them that they might have been victims of harassment, which would be disruptive and would negatively impact employee moral [sic];" and that the information sought in Request No. 3 is not "relevant in any way to the investigation of the Charge except insofar as it might contain information concerning other allegations of illegal harassment by Mr. Elwell, but asserting affirmatively that it does not." Petitioner's objections are not supported by law or facts.  Each objection is addressed below.

## II.   ANALYSIS

The EEOC is specifically authorized by statute to conduct investigations to determine if employment discrimination is being committed or has occurred. 42 U.S.C. § 2000e-5 and 42 U.S.C. § 2000e-8(a).  Title VII grants the EEOC broad investigatory powers, providing that the Commission "shall . . . have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."  42 U.S.C. § 2000e-8(a).

### A.  The information requested in Request No. 1 has not been provided to the EEOC

Petitioner objects to Request No. 1 on the grounds that it furnished the information requested in a letter from counsel dated September 12, 2012.  But Petitioner did not produce to the EEOC all of the information requested in the first subpoena request.  In particular, Request

No. 1 seeks, among other things, the investigative reports and documents from any investigation of the Charging Party's complaints, a description of each disciplinary and/or remedial action taken as a result of each complaint, and copies of all such disciplinary actions.  Petitioner acknowledged in its September 12 letter that it did conduct an investigation: "Mr. Dickerson's report of his investigation, dated August 11, 2011 marked 'attorney-client privileged/prepared at the request of counsel in anticipation of litigation' was submitted to counsel for Petitioner." While the letter suggests that Petitioner is asserting attorney-client privilege and/or that the report is protected by the work product doctrine for the materials documenting the investigation, Petitioner's petition does not assert attorney-client privilege or the work product doctrine as a reason to revoke or limit the subpoena.  Nonetheless, we will address this possible objection to Request No. 1.

As an initial matter, a clear majority of courts have held that "when a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised, in whole or in part [sic], on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." *Angelone v. Xerox Corp.*, No. 09-CV-6019, 2011 WL 4473534, at *2 (W.D. N.Y. Sept. 26, 2011).  *See also Desmare v. New Mexico*, No. 07-199, 2007 WL 5231689, at *4 (D.N.M. Aug. 10, 2007); *EEOC v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611-12 (D. Colo. 2008); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 317-19 (N.D. Ill. 2010); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 893-94 (M.D. Tenn. 2010); *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006); *Walker v. Cnty. Of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005); *McGrath v. Nassau Cnty. Health Care Corp.*, 204 F.R.D. 240,

245-46 (E.D.N.Y. 2001).  Here, Petitioner claims that it acted reasonably in response to Charging Party's complaint.  Indeed, to support this assertion, Petitioner highlights the fact that it "retained an independent Human Resources Consultant with several decades of experience, to investigate the allegation in Ms. Cordova's letter . . . ."  Since Petitioner has placed its internal investigation into issue, it has waived any attorney-client privilege or work product protection that may have attached to the investigation documents.  *See Austin v. City & County of Denver ex rel. Bd. Of Water Com'rs*, No. 05-CV-01313, 2006 WL 1409543, at *7 (D. Colo. May 19, 2006).  *See also Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 256 F.R.D. 661, 672 (D.N.M. 2009) (stating that a party "cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.").  Furthermore, Charging Party specifically states in the Charge that she has "concerns about how the investigation was conducted," making Petitioner's investigation of her complaints a necessary area of inquiry in the EEOC's investigation.

Even if Petitioner has not waived the attorney client privilege or work product doctrine with respect to the requested documents, Petitioner has not offered the necessary factual information to support such a claim of privilege.  The Tenth Circuit has held that the attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citations omitted).  In addition, an attorney's involvement in a communication "does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995).  In fact, "[i]n order to be covered by the attorney-client privilege, a communication between a

lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). In this case, Petitioner hired an outside human resources consultant, Mr. Dickerson, to conduct its internal investigation and prepare a report of his findings. Although Mr. Dickerson submitted his report to Petitioner's attorney, that fact alone is insufficient to protect the report under the guise of attorney-client privilege. *See Motley*, 71 F.3d at 1551. Furthermore, it is well settled that although the attorney-client privilege protects communications between a client and the attorney, it does not protect the underlying facts contained within those communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *Staples v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985). Here, Petitioner admits that Mr. Dickerson's role was to gather "facts." Petitioner states that "[a]t the outset of the interviews, Human Resources Consultant Dickerson informed each witness that he had been engaged by ACC as a 'neutral' investigator and that he was not an advocate for any particular position, but was, rather, charged with gathering facts. Therefore, at a minimum, the facts including witness interviews, notes and memoranda reflecting facts, and the report would not be protected by the attorney-client privilege.

In addition, Petitioner has not articulated any facts that would support an assertion of work product protection for the requested documents. "A mere allegation that the work product doctrine applies is insufficient." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Petitioner has provided no explanation why it believes the work product doctrine applies to the materials prepared by Mr. Dickerson. The work product doctrine only applies to "material assembled by an attorney in preparation for impending litigation." *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) (citation omitted). In this case, Mr. Dickerson is not an attorney. Although the work-product doctrine may apply to legal representatives, at the core of the work-product doctrine is to "shelter[] the mental processes of the attorney, providing a privileged area

*within which he can analyze and prepare his client's case." See Desmare*, 2007 WL 5231689 at *4 (quoting *In re Qwest Coomc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (other citation omitted)).  In addition, the work-product doctrine does not necessarily apply to facts obtained during the course of an investigation.  The Tenth Circuit has held that "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."[1] *See Resolution Trust Corp.*, 73 F.3d 262, 266 (10th Cir. 1995) *(citation omitted).  The work product doctrine is embodied in Federal Rule of Civil Procedure* 26(b)(3)(B), which states that "[i]f the court orders discovery of those materials, it must protect against disclosure of the *mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."*  See  Fed.R.Civ.P.  26(b)(3)(B) (emphasis added).

Here, the Commission seeks the investigative report, along with all other documents, notes, and memoranda relating to the facts of the Petitioner's internal investigation.  The EEOC does not seek the mental impressions, conclusions, opinions, or legal theories of Petitioner's counsel or Mr. Dickerson.  Therefore, because Petitioner's September 12 letter indicates that Petitioner has not produced all documents to Request No. 1, and because Petitioner has not provided evidence to show that any withheld documents are subject to the attorney client privilege or protection of the work product doctrine, we find no basis to revoke Request No. 1.

**B.  The information requested in Request Nos. 2 and 3 seek relevant information.**

Petitioner objects to Request Nos. 2 and 3 on the basis that the information requested is

---

[1] A party may discover documents that contain fact work product by satisfying the substantial need/undue burden test. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 n. 12 (10th Cir. 1998).  Here, there is a substantial need for the investigative report because the charge raises questions about the investigation and the report is necessary to determine if the Petitioner acted in a reasonable manner in responding the Charging Party's complaint.

irrelevant. Request No. 2 seeks Petitioner's employee list from 2009 to the present, and Request No. 3 seeks the personnel file of Patrick Elwell, the alleged harasser. Both of these sets of documents are relevant to the Commission's investigation of this charge. First, Petitioner's employee roster with contact information is relevant because, in order to investigate Charging Party's claims of harm to herself and others, the Commission must be able to contact other employees to determine whether they observed or experienced such behavior. Second, the charge alleges that Mr. Elwell sexually harassed the Charging Party and other female employees, that he treated them in a demeaning and discriminatory way, and that he may have engaged in similar unlawful conduct with other female employees in the past. Therefore, information in Mr. Elwell's personnel file may be relevant to showing whether he had a history of this type of conduct and what information Petitioner knew about his behavior before he harassed and retaliated against Charging Party. For example, the personnel file might contain information concerning other allegations of illegal harassment by Mr. Elwell and Petitioner's responses to that behavior. The personnel file is also relevant to identify any discipline Mr. Elwell may have received as a result of discriminatory conduct, any trainings he had regarding discrimination, performance evaluations, and termination records. The Commission's narrow request for the employee roster and a single personnel file of the alleged harasser is not overly broad and relevant to the Commission's investigation.

Courts regularly construe the EEOC's power to investigate and subpoena information relevant to the investigation broadly. As the Ninth Circuit explains:

> [T]he EEOC must be permitted to investigate the full picture of [Petitioner's] recruitment and internal hiring practices. We therefore decline the companies' invitation to straitjacket the EEOC into an artificially narrow survey of [information]. Clearly, an alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for an agency

*investigation.*

*EEOC v. Recruit U.S.A. Inc.*, 939 F.2d 746, 756-57 (9th Cir. 1991) (citations omitted). The information sought must only be "relevant to the charge under investigation." 42 U.S.C. §2000e-8(a). This requirement is "not especially constraining" and is "generously" construed, "afford[ing] the Commission access to virtually *any* material that *might* cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984) (emphasis added); *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1429 (9th Cir. 1983) (stating that the EEOC may obtain any evidence that is "not plainly incompetent or irrelevant to any lawful purpose"); *see also EEOC v. Fed. Express Corp.*, 558 F.3d 842, 854 (9th Cir. 2009) ("Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance"); *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) (per curiam) (EEOC may subpoena documents "concerning any employ[ment] practice which may shed light on the discrimination charged").

The subpoena's requests seek relevant information that is reasonably limited in time and scope, and Petitioner's objections on these grounds are denied.

### III.  CONCLUSION

For the reasons set forth above, Petitioner's Petition fails to raise objections that would justify revoking the subpoena. The information sought is relevant to the charge and within the Commission's broad investigatory powers. As such, Petitioner must submit complete responses to the subpoena requests. Where Petitioner has imposed its own limitations on the information sought, it is instructed to provide all information responsive to each request.

### IV.  DETERMINATION

Based upon the foregoing, it is determined that the Petition to Revoke Subpoena No.

PHX-13-42 is denied. Petitioner is directed to provide the Commission with complete responses to Subpoena No. PHX-13-42 within 25 days of the date of this Determination.

ON BEHALF OF THE COMMISSION:

DATED: _12/24_, 2013

Bernadette B. Wilson
Executive Officer
Executive Secretariat

# ATTACHMENT 8



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071
Website: www.eeoc.gov

January 10, 2014

**Via facsimile & Certified Mail**
Albuquerque Country Club
601 Laguna Blvd. SW
Albuquerque, NM 87111

Robert P. Tinnin, Jr.
Tinnin Law Firm
500 Marquette NW
Suite 1300
Albuquerque, NM 87102

RE:  **Christina Martinez vs. Albuquerque Country Club**
     **39B-2012-00188/Subpoena No. PHX-13-42**

Dear Mr. Tinnin:

Enclosed is the Determination on Petition to Revoke or Modify, the subpoena issued on July 31, 2013, for Charge Number 39B-2012-00188 Martinez vs. Albuquerque Country Club. We realize that this determination was signed on December 24, 2013. Due to the holidays and staffing we were unable to send this determination to you until today.

We apologize for this delay and we are granting you an additional 21 days to comply with this subpoena determination. If you have any questions regarding this matter feel free to call me at (602) 640-5019.

Sincerely,

Melinda Caraballo
Enforcement Supervisor

39B-2012-0188   Subpoena# DHR-13-42   Christina Martinez

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert P. Tinnin, Jr.
Tinnin Law Firm
500 Marquette NW
Suite 1300
Albuquerque, NM 87102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
_____   1/13/14

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7010 1870 0000 5782 4240

PS Form **3811**, February 2004          Domestic Return Receipt          102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
**Phoenix District Office**
3300 N. Central Avenue, Suite #690
Phoenix, Arizona 85012-2504

Attn: Melinda Caraballo